[Cite as *State v. Smith*, 2022-Ohio-420.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO.  4-21-04

    v.

MICHAEL A. SMITH,                 O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO.  4-21-05

    v.

MICHAEL A. SMITH,                 O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO.  4-21-06

    v.

MICHAEL A. SMITH,                 O P I N I O N

    DEFENDANT-APPELLANT.

Case Nos. 4-21-04, 4-21-05, 4-21-06, 4-21-07

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**               **CASE NO. 4-21-07**

    **v.**

**MICHAEL A. SMITH,**               **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeals from Defiance County Common Pleas Court**
**Trial Court Nos. 20 CR 13938, 21 CR 14246, 20 CR 14023 and 20 CR 14128**

**Judgments Affirmed**

**Date of Decision: February 14, 2022**

**APPEARANCES:**

    *Timothy C. Holtsberry* **for Appellant**

    *Russell R. Herman* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Michael A. Smith, appeals the March 29, 2021 judgments of sentence of the Defiance County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a series of interactions between Smith and his previous romantic partner, M.L. On April 8, 2020, M.L. complained to the Defiance Police Department of ongoing harassment she was experiencing from Smith. Specifically, M.L. complained that on that day, Smith left two harassing voicemails. Although the voicemails came from an unknown number, due to their previous interactions with Smith, M.L. and her daughter recognized the male voice in the recordings as belonging to Smith. In addition, M.L. reported finding a grocery bag containing angel figurines on her porch. Also, on April 13, 2020, M.L. reported returning to her residence and found various items and a card signed by Smith.

{¶3} On April 13, 2020, a complaint was filed in the Defiance Municipal Court charging Smith with menacing by stalking in violation of R.C. 2903.211(A)(1), a fourth-degree felony. Furthermore, on April 15, 2020, the trial court granted M.L. a protection order pursuant to R.C. 2903.213 against Smith. On April 17, 2020, Smith waived a preliminary hearing and was bound over to the Defiance County Grand Jury. On June 11, 2020, the Defiance County Grand Jury indicted Smith on two counts in case number 20 CR 13938: Count One of menacing by stalking in violation of R.C. 2903.211(A)(1), a fourth-degree felony, and Count Two of violating a protection order in violation of R.C. 2919.27(A)(2), a third-degree felony. Smith appeared for arraignment on July 10, 2020 and entered a plea of not guilty to the counts in the indictment.

{¶4} On July 5, 2020, M.L. reported to the Defiance Police Department that on June 5, 2020, she began receiving "constant" text messages from the same unknown number. M.L. also recounted that on July 4 and 5, 2020, she received "constant" telephone calls from a restricted number. M.L. advised that when she answered the phone, Smith threatened to hurt M.L.'s friend with whom she was spending the weekend. On July 4 and 5, 2020, Smith also left two voicemails on M.L.'s phone.

{¶5} On July 6, 2020, a complaint was filed in the Defiance Municipal Court charging Smith with violating a protection order in violation of R.C. 2919.27(A)(2). Smith waived a preliminary hearing and was bound over to the Defiance County Grand Jury on July 8, 2020. Subsequently, on July 23, 2020, the grand jury indicted Smith in case number 20 CR 14023 on two counts of violating a protection order in violation of R.C. 2919.27(A)(2), fifth-degree felonies. On August 3, 2020, Smith appeared for arraignment on this case and entered not guilty pleas to the counts in the indictment.

{¶6} Then, on October 8, 2020, the Defiance County Grand Jury indicted Smith in case number 20 CR 14128 of three additional counts of violating a protection order in violation of R.C. 2919.27(A)(2). Counts One, Two, and Three alleged that Smith violated the protection order against M.L. in July 2020, August

2020, and September 2020, respectively. On October 13, 2020, Smith appeared for arraignment and entered pleas of not guilty.

{¶7} On November 9, 2020, Smith appeared for a change-of-plea hearing in all three of his pending cases. With respect to case number 20 CR 13938, Smith withdrew his pleas of not guilty and entered no contest pleas to both counts in the indictment. With respect to case number 20 CR 14023, Smith withdrew his plea of not guilty to Count One and entered a no contest plea. In exchange, the State agreed to recommend dismissal of Count Two at the sentencing hearing. With respect to case number 20 CR 14128, Smith withdrew his plea of not guilty to Count One and entered a no contest plea. In exchange, the State agreed to recommend dismissal of Counts Two and Three at the sentencing hearing. The trial court accepted Smith's no contest pleas and entered findings of guilty. On November 12, 2020, the trial court filed its judgment entries of conviction.

{¶8} Based on behavior that occurred while Smith was incarcerated on the pending cases, the Defiance County Grand Jury issued a fourth indictment against Smith on February 25, 2021 in case number 21 CR 14246. This indictment charged him with two additional counts of violating a protection order in violation of R.C. 2919.27(A)(2), fifth-degree felonies. The indictment alleged that Smith again violated the protection order against M.L. in January 2021 and February 2021,

respectively. On March 4, 2021, Smith appeared for arraignment on case number 21 CR 14246 and pleaded not guilty to the counts in the indictment.

{¶9} On March 24, 2021, the parties appeared for a hearing on Smith's four pending cases. First, with respect to case number 21 CR 14246, Smith withdrew his pleas of not guilty and entered pleas of no contest to the counts in the indictment. The trial court accepted Smith's pleas and found him guilty of the counts in the indictment.

{¶10} The trial court then proceeding to sentencing. In case number 20 CR 13938, the trial court sentenced Smith to 17 months in prison on Count One and 30 months in prison on Count Two to be served consecutively to each other for an aggregate of 47 months. With respect to case number 20 CR 14023, the trial court imposed a sentence of 11 months in prison. In case number 20 CR 14128, the trial court sentenced Smith to 11 months in prison. With respect to case number 21 CR 14246, the trial court sentenced Smith to 11 months in prison on Count One and 11 months in prison on Count Two to be served concurrently to each other. Further, the trial court ordered the sentences in case numbers 20 CR 14023 and 20 CR 14128 to be served concurrently to each other but the remainder of the sentences to be served consecutively for an aggregate of 69 months in prison.

{¶11} Finally, the State recommended the dismissal of Count Two in case number 20 CR 14023 and Counts Two and Three in case number 20 CR 14128.

Accordingly, the trial court dismissed the aforementioned counts. On March 29, 2021, the trial court filed its judgment entries of sentence in case numbers 20 CR 13938, 20 CR 14023, and 20 CR 14128 and its judgment entry of conviction and sentence in case number 21 CR 14246.

{¶12} On April 23, 2021, Smith filed notices of appeal. He raises one assignment of error for our review.

### Assignment of Error

**Trial court erred as it did not make the proper findings to impose consecutive sentences.**

{¶13} In his assignment of error, Smith argues the trial court erred by failing to make the findings necessary to impose consecutive sentences. Specifically, Smith argues that the record does not support the trial court's decision to impose consecutive sentences because the record does not support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. Here, Smith does not challenge the length of any of the sentences imposed. Rather, he challenges only the trial court's determination that the sentences should be served consecutively to each other. Accordingly, we limit our review to a consideration of whether the trial court made the necessary findings prior to imposing consecutive sentences and whether those findings are supported by the record.

{¶14} Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not

support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶15} "Except as provided in * * * [R.C. 2929.14(C)], * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in relevant part:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to [R.C. 2929.16, 2929.17, or 2929.18], or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of

the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)   The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶16} "R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences." *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15 and 12-16-16, 2017-Ohio-2920, ¶ 17. "Specifically, the trial court must find:  (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *Id.*

{¶17} When imposing consecutive sentences, the trial court must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29, 37.  In complying with this requirement, the trial court "has no obligation to state reasons to support its findings." *Id.* at ¶ 37.  "[P]rovided that the necessary findings can be found in the record and are incorporated into the sentencing entry," a trial court need not recite a "talismanic incantation" of the language of R.C. 2929.14(C)(4) to properly impose consecutive sentences.  *Id.*

{¶18} At the sentencing hearing, the trial court only made the following statement regarding consecutive sentences:

> It's the Court's belief given your just absolute unwillingness to comply with the law that consecutive terms are necessary to protect the public and specifically this victim, and so as not to demean the seriousness of your conduct, consecutive terms are necessary that cumulative prison will be a sixty-nine month prison term.

(Mar. 24, 2021 Tr. at 21-22).

{¶19} Furthermore, in each of the judgment entries of sentence, the trial court made the following findings:

> Based on all of the foregoing considerations and upon consideration of the statutory sentencing factors, the Court now finds that consecutive terms are necessary to adequately protect the public and are not disproportionate given the nature of these offenses, the seriousness of the conduct and the danger the offender poses to the public including the risk that the Defendant will reoffend * * *.

(Case No. 20 CR 13938, Doc. No. 32); (Case No. 20 CR 14023, Doc. No. 24); (Case No. 20 CR 14128, Doc. No. 20); (Case No. 21 CR 14246, Doc. No. 8). In reviewing the record, it is clear to us that the trial court determined consecutive sentences: (1) were necessary to protect the public from future crime, (2) are not disproportionate to the seriousness of Smith's conduct and the danger he poses to the public, and (3) were necessary to protect the public from future crime due to Smith's history of criminal conduct.

{¶20} Admittedly, the trial court's consecutive-sentencing findings at the sentencing hearing and in the judgment entry of sentence are scant. However, reading the consecutive-sentencing findings the trial court made at the hearing in context and in conjunction with the findings made in the judgment entry, we can

-10-

discern that the trial court engaged in an appropriate analysis of the sentencing factors before imposing consecutive sentences.

{¶21} Although, at the sentencing hearing, the trial court did not expressly use the term "disproportionate" in its consecutive-sentence findings, by stating that consecutive terms are necessary "so as not to demean the seriousness of [Smith's] conduct," it is clear the trial court conducted the necessary proportionality analysis and made the required finding. *See State v. Rodriguez*, 3d Dist. Defiance No. 4-16-16, 2017-Ohio-1318, ¶ 12 (finding that "[a]lthough the trial court could have been clearer in the language used at the hearing," the trial court's statements regarding the quantity of drugs involved in the offense and the danger to public "equate" to a finding that consecutive sentences are not disproportionate); *State v. Fields*, 10th Dist. Franklin No. 16AP-417, 2017-Ohio-661, ¶ 20 (holding that the trial court made a proportionality finding "even though the trial court employed the language of R.C. 2929.14(C)(4)(b), rather than the specific language of R.C. 2929.14(C)(4)."); *State v. Dixon*, 10th Dist. Franklin No. 17AP-884, 2018-Ohio-3759, ¶ 10 (finding the trial court engaged in a proportionality analysis even though it did not use the statutory language).

{¶22} Additionally, the trial court did not specifically state that Smith's "history of criminal conduct" demonstrates that consecutive sentences are necessary to protect the public from future crime by Smith. However, in the context of the

sentencing hearing, it is clear the trial court considered Smith's criminal history when imposing consecutive sentences. Specifically, prior to making the consecutive-sentencing findings, the trial court conducted a lengthy review of Smith's criminal history, which spanned decades, and included prior convictions for violating protection orders. (Mar. 24, 2021 Tr. at 20-21). In addition, the trial court reviewed the factual history of the present offenses, all of which involved the same victim, and which spanned several months in duration. (*Id.* at 11-12, 21). Accordingly, in context, the trial court's statement regarding Smith's "absolute unwillingness to comply with the law" clearly references Smith's extensive criminal history, including his history of violating protection orders and his continued harassment of the victim.

{¶23} Finally, it is clear from the record that both parties understood and agreed that at least some portion of the sentences imposed would be consecutive. Specifically, at the sentencing hearing, the parties referenced a negotiated plea agreement that the parties intended to enter prior to Smith's indictment for case number 21 CR 14246. This agreement consisted of a joint-recommendation of a cumulative sentence of 59 months in prison which necessarily included several consecutive sentences. (Mar. 24, 2021 Tr. at 2-3). Smith's trial counsel

acknowledged this understanding by requesting that the trial court "keep [the sentence] at fifty-nine months."[1] (*Id.* at 17).

{¶24} Having found that the trial court made the necessary findings prior to imposing consecutive sentences, we next address Smith's argument that the record does not support the trial court's consecutive-sentencing findings. Specifically, Smith complains that the record does not support the trial court's findings that consecutive sentences were necessary to protect the public or proportionate to Smith's behavior. We disagree.

{¶25} Smith argues that the record does not support the trial court's findings that consecutive sentences are proportionate or that consecutive sentences were necessary to protect the public or victim from future crime by Smith because (1) he did not engage in violence against the victim and (2) the victim invited Smith's behavior. We will address both of Smith's arguments in turn.

{¶26} First, with respect to Smith's allegation that he did not engage in violence against the victim, and thus, consecutive sentences are inappropriate, we find Smith's argument to be misplaced. First, Smith was not charged with domestic violence. Furthermore, we are not aware of, and Smith fails to direct us to any

---

[1] It is evident from the record that, prior to the filing of case number 21 CR 14246, the intention of the parties was to jointly recommend a sentence of less than five years to allow Smith to apply for judicial release after 180 days. (*See* Nov. 9, 2020 Tr. at 3-4); (Mar. 24, 2021 Tr. at 2-4, 17). The joint recommendation included consecutive terms in order to arrive at the 59-month recommendation; however, the State agreed not to oppose Smith's timely-filed motion for judicial release.

authority requiring a finding of physical violence for the trial court to impose consecutive sentences for menacing by stalking or violating a protection order. Moreover, although Smith attempts to downplay his conduct by contrasting domestic violence with his behavior of "only * * * call[ing] her repeatedly," the record indicates that in the several months that Smith was incarcerated for menacing by stalking and violating a protection order, Smith contacted the victim more than 600 times. (Mar. 24, 2021 Tr. at 11-12). The calls were described as a "persistent" and an "everyday occurrence" which consisted of "multiple calls per day" despite a protection order being in place. (*Id.*). Moreover, the record indicates that when the victim did not answer his telephone calls, Smith persisted to attempt to contact her using a third party. (*Id.* at 11). Accordingly, although the conduct underlying the offenses may not have included physical violence, Smith's conduct is, nevertheless, an egregious violation of the applicable statutes.

{¶27} Next, Smith argues that the consecutive sentences are not proper because M.L. was the only person harmed by Smith's behavior and M.L. invited his contact with her. However, there is no requirement that the offender's conduct must be directed toward multiple victims in order for the trial court to find that consecutive sentences are necessary to protect the public. Additionally, although M.L. is the only victim named in the indictments, the record reveals that Smith made

physical threats against M.L.'s friend upon discovering M.L. spending the weekend with this individual.

{¶28} We are also not persuaded by Smith's argument that the trial court erred by ordering consecutive sentences because the victim invited contact from Smith. The Supreme Court of Ohio has clarified that "[p]rotection orders are about the behavior of the respondent and nothing else. How or why a respondent finds himself at the petitioner's doorstep is irrelevant." *State v. Lucas*, 100 Ohio St.3d 1, 2003-Ohio-4778, ¶ 39. Moreover, the record indicates that the victim answered the phone on some occasions "because she feels it's the only way that he'll stop calling her on those days * * *." (Mar. 24, 2021 Tr. at 12). The record reveals that M.L. has been a long-standing victim of Smith. In addition to the fact that the last three cases occurred while the first case was pending, M.L. was also the victim of Smith's prior convictions for menacing by stalking dating back to 2012. (*Id.* at 20). Furthermore, Smith's continued actions involving M.L., combined with his criminal history spanning decades, demonstrate Smith's unwillingness to follow court orders and supports the trial court's finding that Smith's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public and are not disproportionate to the offenses.

{¶29} Finally, although we conclude the findings the trial court made at the sentencing hearing and in the judgment entry of sentence were sufficient to support

consecutive-sentencings, we caution trial courts that even in cases where the defendant's conduct is so egregious that the need for consecutive sentencing may seem obvious, the trial court still must pause and expressly make the necessary findings both at the sentencing hearing and in its subsequent journal entry.

{¶30} Accordingly, because the trial court made the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences and those findings are supported by the record, defendant-appellant's consecutive sentences are not clearly and convincingly unsupported by the record or otherwise contrary to law.

{¶31} Smith's assignment of error is overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the Defiance County Common Pleas Court.

*Judgments Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**